**MAC CORPORATION OF AMERICA and WDS, Inc. (Successors in Interest to Saturn Manufacturing, Inc.), Appellants,**

v.

**WILLIAMS PATENT CRUSHER & PULVERIZER CO. and Robert M. Williams, Appellees.**

**Appeal No. 85–883.**

United States Court of Appeals, Federal Circuit.

July 8, 1985.

James S. Leigh, Klarquist, Sparkman, Campbell, Leigh & Whinston, of Portland, Or., argued for appellants. With him on the brief were Alexander C. Johnson, Jr. and Mark S. Matkin.

Gerald D. Morris and Richard L. Prebil, Shepherd, Sandberg & Phoenix, of St. Louis, Mo., of counsel.

Jeffrey W. Tayon, Butler & Binion, of Houston, Tex., argued for appellee. With him on the brief was Ned L. Conley.

Before MARKEY, Chief Judge, KASHI-WA and SMITH, Circuit Judges.

MARKEY, Chief Judge.

MAC Corporation of America (MAC) appeals from denial of a motion for a show cause order and contempt judgment. Because the district court did not abuse its discretion, we affirm.

*Background*

*(a) Underlying Infringement Action*

MAC is successor in interest to Saturn Manufacturing, Inc. (Saturn), owner of United States Patent 4,034,918 (the '918 patent). The '918 patent is directed to an industrial shear-type shredder for pulverizing metal scrap, tires, and general refuse. On January 25, 1980, Saturn sued Williams Patent Crusher & Pulverizer Co. and Robert M. Williams (collectively, Williams), in the Eastern District of Missouri, alleging infringement and unfair competition. Williams counterclaimed for declaratory judgment that the '918 patent was invalid and not infringed.

After an eight-day trial, the jury specifically found claims 8 and 10 of the '918 patent valid and willfully infringed by Williams' RIPSHEAR shredder, but found for

Williams on the unfair competition claim. Williams' post-trial motions for judgment notwithstanding the verdict and for new trial were denied.

On November 16, 1981, Judge Hungate entered judgment for Saturn and this injunction:

IT IS HEREBY FURTHER ORDERED AND ADJUDGED that defendants Williams Patent Crusher & Pulverizer Co. and Robert M. Williams, their officers, agents, servants and employees, and those persons in active concert or participation with them, who receive notice hereof, are hereby permanently enjoined and restrained, from and after the date hereof, and until July 12, 1994, (the date of expiration of said patent) from directly or indirectly infringing or inducing infringement of claims 8 or 10 [1] of Letters Patent 4,034,918 by making, using, or selling, or causing to be made, used, or sold, shredders covered by such claims and any infringing equivalents thereof.

The United States Court of Appeals for the Eighth Circuit affirmed the judgment in all material respects, 713 F.2d 1347, 219 USPQ 533 (8th Cir.1983), and remanded for determination of prejudgment interest and increased damages in light of *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211, 217 USPQ 1185 (1983).

### (b) Alleged Contempt

On October 1, 1981 (after the jury verdict but before entry of final judgment), Williams' patent counsel (Woodruff) wrote to MAC's patent counsel, stating that Williams had developed a "new design" for its RIPSHEAR shredder which, in Woodruff's opinion, did not infringe any claim of the '918 patent, and that an application for patent on the new design had been prepared.

On October 5, Woodruff telephoned James S. Leigh, one of MAC's attorneys, invited Leigh and Dan Burda, a MAC engineer, to come to St. Louis and examine the new design. Woodruff confirmed the invitation in a letter dated October 7, but enclosed a "Confidential Disclosure Agreement". That letter contained this disclosure of the "new design":

The control apparatus for use with the [Williams'] RIPSHEAR shredders embodies a modification of the control apparatus in existence at the time of the litigation ... The modification entails removal of the pressure sensing switch in the supply side of the hydraulic fluid system for forward drive of the hydraulic motor which is connected into an electrical circuit associated with a flow reversing means in that fluid system. The removed pressure sensing switch is replaced by a proximity switch connected into the electrical circuit and placed in the RIPSHEAR shredder so it can be responsive to the rotation of a gear in the gear train between the hydraulic motor and the counterrotating cutter shafts

1. Claim 8 reads:

8. A drive arrangement for a shredding apparatus in which a pair of parallel spaced-apart driven cutter shafts mount coacting counterrotating disc-type cutter elements, said drive arrangement comprising:
   hydraulic fluid-pumping means,
   reversible hydraulic motor means,
   hydraulic fluid circuit means containing said hydraulic pumping means and said hydraulic motor means,
   flow-reversing means for reversing the flow of hydraulic fluid in said hydraulic circuit from said pumping means to said hydraulic motor means,
   electrically operable means for actuating said flow reversing means including a fluid pressure-operated electrical switch means in an electrical control circuit sensitive to hydraulic pressure in said hydraulic circuit,
   said hydraulic motor means comprising a radial piston hydraulic motor driving said pair of cutter shafts from a common output shaft through a train of gears arranged to rotate one of said shafts in a direction opposite to the direction of rotation of the opposite said shaft and at a rotational speed greater than that of said opposite shaft.
   Claim 10 depends from Claim 8, adding "including electrically operable time delay means in said electrical control circuit means operable to maintain said flow-reversing means activated and to deactivate said flow-reversing means after a predetermined period of time following actuation thereof."

and thereby control the flow reversing means.

On October 9, MAC declined the invitation to inspect.

On November 23, 1981, Williams filed its patent application on the new design. On September 12, 1983, it filed a continuation which issued June 5, 1984 as Patent No. 4,452,400 (the '400 patent).

On June 7, 1984, MAC wrote Appleton Papers, Inc., (Appleton), a potential purchaser of a Williams' shredder,[2] advising that the proferred Williams shredder infringed the '918 patent, that Williams had no license under that patent, and warned:

> If Williams persists in its efforts to sell a machine as described to your company, MAC–Saturn will have no alternative but to seek legal redress. In fact, MAC–Saturn has recently filed suit for infringement of its patent against Shredding Systems, Inc., of Wilsonville, Oregon, for manufacture and sale of a similar machine.
>
> Please advise us promptly of your position in this matter.

Despite the vigorous language directed to Williams' potential customer, MAC did not communicate its views to Williams and MAC filed no motion for contempt.

On July 19, 1984, Williams sought in the Southern District of Texas a declaratory judgment that its "new" shredder (allegedly disclosed in the '400 patent) did not infringe the '918 patent. MAC counterclaimed for infringement. On March 8, 1985, on MAC's motion and over Williams' opposition, that action was transferred to Judge Hungate's court.

#### (c) The Contempt Action

On October 16, 1984, MAC filed a motion with Judge Hungate for a show cause order and contempt judgment, alleging an infringing sale by Williams to Appleton and that "a shredder made in accordance with the Williams ['400] patent is essentially the same as the Williams RIPSHEAR shredder found to infringe and is therefore in contempt of this Court's judgment."

In an accompanying Memorandum, MAC said (1) the test of contempt was whether more than "merely colorable" differences existed between the product previously adjudged an infringement and the now accused product; (2) determination of whether the differences were merely colorable required application of the doctrine of equivalents; and (3) a full trial on infringement was not needed. MAC submitted two affidavits in support of its allegations.

Responding, Williams said: (1) MAC was "equitably estopped" from bringing a contempt proceeding; (2) MAC's motion was barred by laches; (3) there was a "fair ground of doubt" on infringement that barred a contempt proceeding; (4) the injunction was not sufficiently specific; (5) equivalency could not be determined in a contempt proceeding, because the scope of the claims and range of equivalents had not been determined in the underlying litigation; (6) the '918 patent was not a "pioneer" invention entitled to a broad range of equivalents (citing the appellate court's statement that the '918 patent "is a combination of known mechanical elements." 713 F.2d at 1352, 219 USPQ at 537);[3] and (7) that infringement should be determined in its declaratory judgment action.

#### (d) The District Court's Decision

In a November 30, 1984 published memorandum, the district court, 598 F.Supp. 760,

---

**2.** Williams says the shredder offered to Appelton embodies subject matter claimed in its '400 patent, and that such shredders had been offered for sale in trade publications since 1981. MAC says it had no knowledge of the manufacture or sale of Williams' "new device" before it learned of the offer to Appelton.

**3.** That an invention is a combination of known elements is not relevant in determining either patentability or status as a "pioneer" invention. Virtually all inventions are combinations of old, known elements. See Fromson v. Advance Offset Plate, Inc., 755 F.2d 1549, 1556, 225 USPQ 26, 31 (Fed.Cir.1985). "Pioneer" status has to do with the position occupied by the invention in the art to which it pertains, or which it creates, not with whether it is a combination of known elements.

said that contempt proceedings were appropriate for deciding patent disputes "only where there are merely slight or colorable differences between the enjoined device and the new device," quoting from *American Foundry & Mfg. Co. v. Josam Mfg. Co.*, 79 F.2d 116, 118, 26 USPQ 338 (8th Cir.1935). "Where infringement by the new device is not clear on the face of the matter, and there are substantial issues for the determination of the court, the plaintiff may not have them determined in contempt proceedings."

The district court went on to say:

This Court has carefully considered the pleadings and memoranda filed by the parties detailing the differences between the shredding machines made pursuant to patents '918 and '400. The Court finds that there exists a fair ground of doubt as to whether defendants' machine infringes upon plaintiff's patent '918. Therefore ... the appropriate proceeding is the previously filed declaratory judgment action rather than a contempt proceeding in this Court.[4]

### Issue

Whether denial of MAC's motion constituted abuse of the district court's discretion under all circumstances in this case.

### Opinion

■ Civil contempt "is a severe remedy, and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of defendant's conduct." *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 5 S.Ct. 618, 622, 28 L.Ed. 1106 (1885). In denying MAC's motion, the district court recognized and

conscientiously applied this well-settled principle.

Contrary to approaches made by both parties,[5] review of determinations committed to the district courts' discretion is narrowly circumscribed. Reversal is limited to denials of motions for contempt judgment based on an incorrect application of law, *see Union Tool Co. v. Wilson*, 259 U.S. 107, 112, 42 S.Ct. 427, 429, 66 L.Ed. 848 (1922) or on an application of a proper legal standard to clearly erroneous findings, *see, e.g., Panther Pumps & Equipment Co., Inc. v. Hydrocraft, Inc.*, 566 F.2d 8, 19, 196 USPQ 81, 90 (7th Cir.1977), *cert. denied*, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978). *See also Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 756 F.2d 1574, 1581, 225 USPQ 357, 363 (Fed.Cir. 1985) ("Abuse of discretion may be established by showing that the district court either made an error of law, or a clear error of judgment, or made findings which were clearly erroneous.").

■ MAC says its affidavits established "*prima facie* contempt", entitling it to issuance of a show cause order, limited discovery, and an evidentiary hearing. We are not persuaded that a district court's discretion in this case is constrained to determination of whether a *prima facie* case appears. Nor need we cite MAC's recognition of need for discovery and an evidentiary hearing as confirming the presence of "a fair ground of doubt." Judge Hungate correctly looked to the law in denying MAC's motion on the basis of a "fair ground of doubt". *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. at 618, 5 S.Ct. at 622; *American Foundry & Mfg. Co. v. Josam Mfg. Co.*, 79 F.2d at

---

**4.** At the time of Judge Hungate's decision, the declaratory judgment action was pending in another forum. It was transferred to Judge Hungate three months after denial of MAC's motion. Those factors are not relevant, however on this appeal.

**5.** MAC urges us to make findings on equivalency; Williams urges us to hold on estoppel and laches. To succumb to either urging would improperly breach the limits of appellate review.

Similarly, we neither discuss nor decide here the criteria for determining the presence or absence of contempt in a contempt proceeding, the sole issue being whether Judge Hungate abused his discretion in declining to conduct such a proceeding in this case. Nor do we hold that the mere filing of a complaint for declaratory judgment, in the same or another forum, will in all cases preclude the conduct of a contempt proceeding.

118, 26 USPQ at 339. Our appellate review extends only to whether the record fails to disclose any basis whatever for the "fair ground of doubt" finding.

Judge Hungate had been deeply versed in the underlying facts and circumstances of the dispute. Before us is his clear, unequivocal statement that he read and considered the briefs and affidavits, that he recognized that there was some difference in the enjoined and now accused shredders, and that a "fair ground for doubt" on infringement existed. That there is some difference in the two shredders is undisputed. MAC bears a heavy burden on appeal from denial of its motion. It has supplied nothing of record that would require or entitle us to gainsay Judge Hungate's finding of a fair ground of doubt.[6]

MAC protests it has been denied "its day in court". That is untrue. Judge Hungate, having determined that it would not be in the interest of justice to determine the merits of this dispute in summary proceedings for contempt, will give MAC its full day in court when he hears and determines Williams' action for declaratory judgment of non-infringement and MAC's counterclaim for infringement. At the trial of that action, MAC will have the discovery and evidentiary hearing it sought in its present motion. If MAC prevails at trial, it may obtain an injunction against production, use, and sale of the now-accused shredders, and Judge Hungate may award such damages and other remedies provided at law and in equity as to him may appear just under all of the circumstances.

AFFIRMED.

---

**6.** The issue in this appeal is not whether this court would on the present record find the presence of a fair ground of doubt. We hold only that the record is not so devoid of a basis for Judge Hungate's finding that his making that finding can be held clearly erroneous.