**FILTRATION DEVELOPMENT CO., LLC, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 03–2835C.**

United States Court of Federal Claims.

Originally Filed Under Seal Dec. 17, 2004.

Reissued for Publication Jan. 4, 2005.

Robert S. Metzger, Washington, D.C., attorney of record for plaintiff, and Bryan B. Arnold and Mary Ita Snyder, of counsel.

David A. Harrington, Department of Justice, Washington, D.C., with whom was Assistant General Peter D. Keisler, for defendant. David M. Cohen, Director, and Robert E. Kirschman, Jr., Assistant Director.

Timothy J. Ryan, U.S. Department of the Army, of counsel.

## OPINION and ORDER

FUTEY, Judge.

This matter is before the court on plaintiff's motion alleging that the Department of the Army (Army) violated the court's April 13, 2004, opinion and order by invoking, for a second time, the unusual and compelling urgency exception to the Competition In Contracting Act (CICA) to procure engine inlet barrier filters (IBF) for the UH–60 Blackhawk helicopter. Plaintiff maintains that the court possesses statutory and inherent authority to enforce its prior orders. Plaintiff also asks the court to hold defendant in contempt or, in the alternative, to require defendant to show cause why it should not be held in contempt. Further, plaintiff requests that the court issue an emergency stay (i.e.,

preliminary injunction) pending resolution of this matter. Plaintiff also seeks attorney fees and costs. Defendant, on the other hand, contends that the Army has fully complied with the court's order. Defendant also asserts that many of the issues advanced in plaintiff's motion are an attack on the substance of the procurement and should be addressed in a separately filed bid protest.

### Factual Background

Given that the court's April 13, 2004, opinion stands at the center of the present controversy, a detailed review of its contents is warranted. First, the court held that the Army exceeded the permissible bounds of the unusual and compelling urgency exception. *Filtration Dev. Co., LLC v. United States*, 60 Fed.Cl. 371, 380–85 (2004). The court's holding was premised on: (1) the uncertainty concerning when additional funding would become available; (2) the current delivery schedule only provided for 183 "A kits" and 150 "B kits;" and (3) the lack of a delivery schedule beyond July 2004. *Id.* Second, the court also held that Organizational Conflict of Interest (OCI) regulations were violated as a result of Westar Corporation's (Westar) dual role as a SETA (systems engineering and technical direction) contractor and supplier of IBF kits, through its affiliate Aerospace Filtration Systems (AFS). *Id.* at 377–80.

Having discerned the existence of CICA and OCI violations, the court next examined whether the factors for granting a permanent injunction were met. The court's statutory mandate under 28 U.S.C. § 1491(b)(3) to "give due regard to the interests of national defense and national security" set the stage for the inevitable analytical confrontation in assessing the "public interest." After carefully weighing the delicate issues involved, the court entered the following injunctive order:

1) Defendant is entitled to procure 183 "A kits" and 150 "B kits" under its current invocation of the unusual and compelling urgency exception;

2) Any procurement in excess of 183 "A kits" and 150 "B kits" must be conduct-

ed on a competitive basis unless an independent justification for invoking an exception to full and open competition is provided;

3) AFS will not be enjoined from participating in the re-instituted trade study or from participating in future competition.

*FDC,* 60 Fed.Cl. at 388. As to the rationale behind the third aspect of the injunction, the court explained that Federal Acquisition Regulations permit the contracting officer (CO) to award the contract despite the OCI upon first obtaining a waiver from the head of the contracting agency that it is in the best interest of the United States to do so. *Id.*[1]

Prior to the court's opinion, the Army in March 2004 re-instituted the trade study which previously had been suspended. The trade study was directed toward identifying an IBF system concept for full airworthiness qualification. Four competitors were invited to participate in the trade study and five designs were submitted for consideration. The trade study reached its conclusion in June 2004. On August 17, 2004, the results of the trade study were discussed in an internal memorandum. While AFS' proposal was ranked the highest with a score of 80, plaintiff's proposal received a score of 55 and was ranked last amongst the competitors. The results of the trade study were released to the participants on October 15, 2004.

Following the issuance of the court's opinion, the Army took certain actions in response thereto. On May 13, 2004, Westar revised its OCI mitigation plan. On September 3, 2004, the CO submitted a proposed course of action to address the OCI and, in addition, requested a waiver. On September 14, 2004, the head of the contracting agency approved the CO's recommendation and waived the OCI. Further, in a memorandum

dated September 21, 2004, the CO stated that Westar's Omnibus 2000 contract had been "bilaterally modified on [September 8, 2004] to formalize the existing prohibition against Westar's participation in any support requirements for the [IBF] System on Army aircraft."[2] The CO also indicated that Westar "has not been tasked to provide any support, analysis, evaluation, development, or any other effort in connection with the engine and [Auxiliary Power Unit] IBF systems on the UH–60."[3] The Army requested and received similar certifications from AFS and Westar on September 16th and 17th respectively.

On September 29, 2004, the Army issued a sole-source contract to AFS for an additional 200 IBF "B kits," which provided the impetus for plaintiff's motion. The Justification and Approval (J & A) was executed on September 9, 2004, approved on September 22, 2004, and relied on the unusual and compelling urgency exception as the authority for using less than full and open competition. The J & A provided that the IBF kits were needed immediately for the upcoming troop and equipment rotations. The J & A also referenced maintenance costs, wear and tear on the helicopters, as well as military readiness and support. On October 13, 2004, the Army corrected an oversight and modified the contract to reflect the unusual and compelling urgency exception as the basis for using other than full and open competition.

On October 14, 2004, plaintiff filed its Motion To Enforce The Court's Prior Order Or, In The Alternative, For An Order To Show Cause And Request For An Emergency Stay. Defendant responded on October 28, 2004, and plaintiff replied on November 8, 2004. The court heard oral argument on December 6, 2004. This matter is, therefore, appropriate for disposition.

1. Only facts relevant to this opinion are summarized herein. The facts were discussed in greater detail in the court's opinion denying defendant's motion to dismiss, *Filtration Dev. Co., LLC v. United States,* 59 Fed.Cl. 658, 660–61 (2004), and in the court's opinion on the parties' cross-motions for judgment on the administrative record, *Filtration Dev. Co., LLC v. United States,* 60 Fed. Cl. 371, 373–74 (2004).

2. Defendant's Response In Opposition To Plaintiff's Motion To Enforce The Court's Prior Order Or, In The Alternative, For An Order To Show Cause And Request For An Emergency Stay, Exhibit 3.

3. *Id.*

## Discussion

It is a fundamental premise of American jurisprudence, one which most certainly could be understood without any citation, that parties to a judicial proceeding must abide by court orders. *Maness v. Meyers,* 419 U.S. 449, 458, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975) ("We begin with the basic proposition that all orders and judgments of the court must be complied with promptly."). Where the United States Court of Federal Claims discerns that a party has failed to obey its order, it may, pursuant to its "incidental powers," "punish by fine or imprisonment, at its discretion, such contempt of its authority as ... disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 28 U.S.C. § 2521(b); see also *Miller–Holzwarth, Inc. v. United States,* 44 Fed.Cl. 156, 161 (1999) ("The court's power to impose sanctions derives from an express statutory grant."), *rev'd on other grounds,* 232 F.3d 905 (Fed.Cir.2000) (unpublished). Such authority, however, also derives from the command that "a violation of a court order should be prosecuted in the court which issued the order." *Illinois v. United States,* 15 Cl.Ct. 399, 412 (1988).

■■■■■ Despite possessing the authority to hold litigants accountable for failing to adhere to instruction, the court does not exercise its enforcement authority lightly. See *Morris v. United States,* 37 Fed.Cl. 207, 214 (1997). This court has imposed a demanding burden of proof on the moving party. *Preemption Devices, Inc. v. Minnesota Min. & Mfg. Co.,* 803 F.2d 1170, 1172 (Fed.Cir.1986) (explaining that civil contempt "is recognized as a severe remedy"). A party alleging a violation of a court order must substantiate its allegations through clear and convincing evidence. *Id.* (citing *KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.,* 776 F.2d 1522, 1524 (Fed.Cir.1985)). An implicit corollary to the elevated standard of proof imposed in civil contempt proceedings is the proposition that a party will not be held in contempt if

"there is a fair ground of doubt as to the wrongfulness of [the party's] conduct ...." *MAC Corp. of America v. Williams Patent Crusher & Pulverizer Co.,* 767 F.2d 882, 885 (Fed.Cir.1985) (quoting *California Artificial Stone Paving Co. v. Molitor,* 113 U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106 (1885)).

■■■■ With this in mind, the moving party relinquishes its burden by showing, through clear and convincing evidence, that: "(1) the offending party violated an order of the Court; (2) the violation was more than *de minimis* or technical noncompliance; and (3) the conduct was not the product of a good faith [and] reasonable interpretation of the order." *Navajo Nation v. United States,* 46 Fed.Cl. 353, 358 (2000) (citing 7 James Wm. Moore Et Al., Moore's Federal Practice § 37.51[7][b] (3d ed.1999)). It is well-established in case law that government officials are presumed to act in good faith, unless a party can provide clear and convincing evidence to the contrary. *Am–Pro Protective Agency, Inc. v. United States,* 281 F.3d 1234, 1239–40 (Fed.Cir.2002); *SDS Int'l, Inc. v. United States,* 55 Fed.Cl. 363, 365 (2003). This presumption is of little use to defendant in this instance as "[t]he general rule in civil contempt is that a party need not intend to violate an injunction to be found in contempt." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 154 F.3d 1345, 1353 (Fed.Cir.1998) (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191–93, 69 S.Ct. 497, 93 L.Ed. 599 (1949)). At this juncture, it warrants reiteration that the only issue before the court is whether the Army violated the court's April 13, 2004, opinion and order.[4]

■■■■ Plaintiff contends that the Army violated the court's opinion and order because its sole-source award was "to the same vendor, for the same product, and for the same reasons as before ...."[5] Plaintiff's contention, however, does not find support in the court's previous opinion and order. The

---

4. The court's opinion should in no way be construed as commenting on the substance of the allegations raised in Donaldson Company, Inc.'s bid protest filed October 15, 2004.

5. Plaintiff's Reply Brief In Support Of Its Motion To Enforce The Court's Prior Order Or, In The Alternative, For An Order To Show Cause And Request For An Emergency Stay (Pl.'s Reply) at 2; see also Transcript of Oral Argument (Tr.) at 6, 15–16, 20.

court rejected plaintiff's argument that AFS should be enjoined from participating in the re-instituted trade study or future competition. *FDC*, 60 Fed.Cl. at 388. In appropriate circumstances, the head of the contracting agency is empowered to waive an OCI when it is in the best interest of the United States to do so. *Id.* (citing 48 C.F.R. §§ 9.503, 9.504(e)). The court expressly indicated that it envisioned a situation where such authority could be exercised. *Id.* In other words, at the time it issued its opinion, the court was aware that the Army could waive the OCI and award a contract to AFS for IBF kits. On September 14, 2004, prior to awarding the contract, the head of the contracting agency approved a recommended course of action and waived the OCI. Accordingly, the current award to the "same vendor" for the "same product" does not violate the court's April 13, 2004, opinion and order.

In addition, plaintiff conceded at oral argument that "[t]he waiver by Major General Pillsbury is, on its face, an effective response to the OCI issue." [6] Although there may be some issue, as plaintiff stated, concerning "whether the waiver was a sound decision or represented corrective or curative action," [7] plaintiff's disagreement with Major General Pillsbury's waiver can only be characterized as an attack on the validity of the "best interest" determination. Such an analysis extends beyond the scope of plaintiff's contempt motion and is more appropriately the subject of a separate bid protest.

The Army's second invocation of the unusual and compelling urgency exception also does not violate the court's opinion and order. The Army was permitted to procure 150 "B kits" under the November 2003 J & A. While the court did indicate that additional procurements for IBF kits "must be conducted on a competitive basis," *id.*, its statement was not absolute. The court qualified its mandate by allowing the Army to use noncompetitive means if "an independent justification . . . is provided." The Army complied with the court's instruction. It limited its procurement under the November 2003

justification to 150 "B kits." The additional "B kits" are not being procured under said justification. Nothing in the court's opinion stated that the Army was perpetually barred from invoking the unusual and compelling urgency exception to procure IBF kits. In addition, an order imposing such a blanket prohibition would conflict with the court's obligations under 28 U.S.C. § 1491(b)(3). Therefore, consistent with the court's opinion, an independent justification supporting the procurement of additional IBF kits under the unusual and compelling urgency exception was executed on September 9, 2004, and approved on September 22, 2004.

Plaintiff maintains, however, that the Army has "use[d] the[] same facts to churn another sole-source award . . . ." [8] Contrary to plaintiff's assertion, the circumstances supporting this procurement are not identical to those raised in the November 2003 J & A. The Army's involvement in the combat theater in Iraq has been extended longer than initially anticipated. No end-date for military operations has been established. Battles with insurgents continue to this day, and military operations recently escalated in several regions. The Army also has mobilized additional troops to bring the total troop levels to 150,000 prior to the January 2005 elections. Blackhawk helicopters are being and will be used in support of these operations. The procured IBF kits were allegedly exhausted in late September 2004 or early October 2004. The September 2004 J & A purports to focus on replenishing the depleted supplies during the Army's extended timetable. Accordingly, the court concludes that the September 2004 J & A comports with the court's opinion and order.

Next, plaintiff maintains that the Army did not undertake any steps to enhance competition in the six months between the court's opinion and contract award. Plaintiff avers that the trade study cannot replace competition and, in any event, the purpose of the trade study was for full airworthiness qualification of all-terrain filters, which, plaintiff

---

**6.** Tr. at 7; see also *id.* at 8 ("Here there appears to be, on its face, a waiver of the OCI regulation . . . .").

**7.** *Id.* at 8.

**8.** Pl.'s Reply at 6; Tr. at 16.

argues, is materially different from an airworthiness certification for desert filters. Plaintiff also contends that the trade study was tainted by the allegedly unresolved OCI. Further, plaintiff asserts that the Army had decided to purchase the filters from AFS prior to the conclusion of the trade study.

The court is convinced that, for purposes of plaintiff's motion, the Army took sufficient affirmative steps to comply with court's opinion and order. The filters being attached to the UH–60 Blackhawk helicopters are operating under an airworthiness release and are only a temporary solution. At the conclusion of military operations, the filters will be removed and the helicopter engines will be returned to their original configuration.[9] The trade study was implemented with the intention of developing a permanent solution—a fully qualified filter system. Four competitors, including plaintiff, participated in the trade study and submitted five design proposals. Sikorsky Aircraft Company evaluated the proposals and reached its conclusion in June 2004, two months before the Army issued the memorandum on which plaintiff relies.[10] Against this backdrop, the court cannot accept plaintiff's characterization of the trade study as a "sham."[11] The court is persuaded that reasonable actions were taken in response to the court's opinion to advance and promote the competitive procurement of IBF kits. The fact that an urgent need for airworthiness release IBF kits developed in the interim does not alter this conclusion.

In sum, after careful review of the Army's conduct, the court concludes that plaintiff has not proffered clear and convincing evidence to establish civil contempt. Plaintiff also has failed to rebut the presumption of good faith afforded government officials. Stated another way, the Army's actions were the "product of a good faith [and] reasonable interpretation" of the court's April 13, 2004, opinion and order. *Navajo Nation*, 46 Fed.Cl. at 358 (citation omitted). Assuming *arguendo* there could be any room for interpretation, there certainly would be a "fair ground of doubt as to the wrongfulness of [the Army's] conduct ...." *MAC Corp.*, 767 F.2d at 885 (quoting *Molitor*, 113 U.S. at 618, 5 S.Ct. 618).

Lastly, to the extent a preliminary injunction would be an appropriate remedy to redress the Army's alleged unreasonable interpretation of the court's opinion and order, the court would decline to exercise its authority to enjoin the contract. In making a determination to grant injunctive relief, the court considers: (1) whether plaintiff is likely to succeed on the merits of its claim; (2) whether plaintiff will suffer specific irreparable injury if performance is not enjoined; (3) whether the harm to plaintiff outweighs the harm to defendant or other interested parties; and (4) the public interest in granting the requested relief. *Cincom Sys., Inc. v. United States*, 37 Fed.Cl. 266, 268 (1997); see also *PGBA, LLC v. United States*, 57 Fed.Cl. 655, 656 (2003). "Plaintiff bears the burden of proving it is entitled to preliminary injunctive relief by clear and convincing evidence." *Seattle Security Servs., Inc. v. United States*, 45 Fed.Cl. 560, 571 (2000) (citing *Delbert Wheeler Constr., Inc. v. United States*, 39 Fed.Cl. 239, 251 (1997)). No one factor is dispositive and a weakness in one factor may be overcome by the strength of the others. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed.Cir.1993).

As was discussed above, plaintiff has not established through clear and convincing evidence likelihood of success on the merits. For that matter, the court has found that the Army did not violate the court's April 13, 2004, opinion and order. Although the court previously acknowledged that "the opportunity to compete for a contract and to secure any resulting profits generally has been recognized to constitute significant harm," *FDC*, 60 Fed.Cl. at 384–85, this proposition begs the question in this context. Where success on the merits is doubtful on its face, the potential for irreparable harm is minimal. It necessarily follows that the risk of harm to the public interest is likewise slight. The lack of success on the merits, therefore, factors heavily in the court's analysis. *FMC*

---

9.  See Tr. at 47.

10.  *Id.* at 33.

11.  *Id.* at 11.

*Corp.*, 3 F.3d at 427 ("If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.").

In addition, given that military operations have been extended, the "national defense and national security" concerns discussed in the court's previous opinion present themselves with full force at this time. See *FDC*, 60 Fed.Cl. at 387. These concerns, however, are not any less credible because the Army's delivery schedule does not in its entirety overlap with the upcoming troop and equipment rotations. The Army has attempted to expedite the delivery of IBF kits and it is anticipated that 40 "B kits" will be delivered in January 2005.[12] The additional units will then be delivered as soon as they become available. Therefore, the scale tilts in defendant's favor once "national defense and national security" concerns are considered. 28 U.S.C. § 1491(b)(3).

It is plaintiff's burden to clearly and convincingly demonstrate its entitlement to a preliminary injunction, which it has not done. Having weighed the factors necessary for a preliminary injunction, the court would be inclined to hold that the extraordinary remedy of a preliminary injunction is not warranted. See *CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1581 (Fed.Cir.1983).

### Conclusion

For the above-stated reasons, plaintiff's Motion To Enforce The Court's Prior Order Or, In The Alternative, For An Order To Show Cause And Request For An Emergency Stay is hereby DENIED. Each party shall bear its own costs.

The parties shall notify the court by Monday, January 3, 2005, of any portion of the opinion containing proprietary information, national defense or national security concerns, or classified information, that should be redacted prior to publication.

IT IS SO ORDERED.

12. *Id.* at 27.