**NAVAJO NATION,**
**Plaintiff/Respondent–Appellee,**

and

**Paul E. Frye, Respondent–Appellee,**

v.

**PEABODY COAL COMPANY, Peabody Holding Company, Inc. and Peabody Western Coal Company, Movants–Appellants.**

No. 00–5072.

United States Court of Appeals, Federal Circuit.

March 29, 2001.

**952**

Before NEWMAN, SCHALL, and LINN Circuit Judges.

## DECISION

SCHALL, Circuit Judge.

Peabody Holding Company, Peabody Holding Company, Inc., and Peabody Western Coal Company (collectively, "Peabody") appeal the decision of the United States Court of Federal Claims that denied Peabody's motion to hold the Navajo Nation (sometimes referred to as the "Nation") and Paul E. Frye, the Navajo Nation's counsel, in civil contempt for using, in a complaint filed *ex parte* and under

seal against Peabody in the United States District Court for the District of Columbia, a document Peabody produced in the Court of Federal Claims. *Navajo Nation v. United States,* 46 Fed. Cl. 353, 362 (2000). Although the Navajo Nation's use of the document in the district court complaint did violate an order of the Court of Federal Claims, the use was a technical violation without consequence because the sensitive subject matter was filed under seal and not served. We therefore *affirm.*

## DISCUSSION

### I.

The Navajo Nation filed suit against the United States in the Court of Federal Claims on December 14, 1993. In its complaint, the Nation alleged that the government had breached its fiduciary duties to the Nation with respect to amendments to a 1964 lease agreement between the Nation and Peabody. The Nation also alleged that the government had breached its contractual obligations under the lease. During discovery in the Court of Federal Claims, the government and the Nation requested documents from Peabody relating to the 1964 lease and the negotiations that led to the lease amendments. Peabody responded to the document requests, indicating that certain information requested was confidential and would not be produced.

To help facilitate Peabody's disclosure of documents, the government, the Navajo Nation, and Peabody entered into a Confidentiality Agreement and Protective Order ("CAPO") on February 12, 1996. The CAPO recited:

> Peabody, Salt River Project and Southern California Edison are willing to permit the United States to disclose to the Navajo Nation documents which contain information that is considered

proprietary to any of them and are also willing to produce other documents which contain information that is considered proprietary to any of them, provided the documents are kept and treated in a confidential manner in accordance with the terms of [the CAPO].

The CAPO indicated that documents provided under it were to only be used in the Navajo Nation's suit against the government. The CAPO stated that Peabody could stamp, as confidential, any information or documents it produced that it "believe[d] to constitute proprietary information, confidential business information, cost and profit data or trade secrets relating to" its business. Paragraph 17 of the CAPO stated that Peabody did not waive its attorney-client privilege or attorney work product privilege to any document that might otherwise be subject to disclosure under the CAPO. The CAPO provided that Peabody could claim privilege with respect to documents by furnishing the government and the Nation with a privilege log so that the propriety of the claim of privilege could evaluated.

After the CAPO was filed with the Court of Federal Claims, Peabody still resisted producing certain documents the Navajo Nation requested. As a result, the Nation moved to compel Peabody to produce those documents. On November 6, 1996, a hearing was held on that motion. At the hearing, Peabody indicated that a number of the documents that had been requested were protected by the attorney-client or attorney work product privilege. Peabody stated that its concern was that if a privileged document was produced, it would be waiving its right to assert the privilege in another proceeding. Some of the documents at issue concerned a 1985 meeting between then-Secretary of the Interior Donald Hodel and Stanley Hulett, a former employee of the Department of the Interior. One of the documents regarding the meeting between Secretary Hodel and Mr. Hulett is the document that was at issue in the contempt proceeding. It is a memorandum dated July 22, 1985, from Peabody attorney E.L. Sullivan to F.L. Barkofske, another Peabody attorney (the "Sullivan memorandum"). The Nation agreed to not assert that Peabody had waived its privilege if Peabody produced the documents; the court asked the parties to memorialize this agreement in writing.

The court then issued an order on November 7, 1996 (the "Order") referring to the agreement reached between the parties during the November 6 hearing. The Order indicated that Peabody would release all documents presently in dispute, one of which was the Sullivan memorandum. The Order stated that Peabody could stamp the documents as "confidential" and could "assert claims of privilege with regard to certain documents." The Order specifically indicated that "[p]roduction of documents for purposes of the present case shall not constitute a waiver of any right of Peabody to raise a claim of privilege as to these documents in any other present or future litigation." The court again directed the parties to memorialize in writing the understanding they had reached during the November 6 hearing and to file the understanding with the court.

The parties memorialized their agreement in a stipulation, which they filed with the court on November 19, 1996 (the "Stipulation"). The Stipulation indicated that Peabody would identify any document it did not intend to release and any document that it did intend to release "but considers so commercially sensitive that its review by either counsel would require counsel to refrain from participating in future negotiations with Peabody ...." The Stipulation also indicated that the par-

ties "agree that the production of any of the documents presently in dispute shall not constitute waiver of any privilege of Peabody ... that may be asserted in any other present or future litigation."

On November 21, 1996, Peabody identified the Sullivan memorandum, listing it as a document that was going to be held back from the government and the Navajo Nation because it was "attorney/client privileged .. and work product privileged."[1] The government and the Nation moved to compel production of the document, and Peabody produced the document in late January of 1997. When Peabody produced the Sullivan memorandum, the memorandum was accompanied by a cover letter indicating that the document was produced under the terms of the CAPO, the Order, and the Stipulation. The document was stamped confidential.

## II.

On July 18, 1997, the Navajo Nation moved to have various documents, including the Sullivan memorandum, excluded from the coverage of the CAPO. The Court of Federal Claims never ruled on the request, however, and the Nation withdrew the motion in October of 1997. Thereafter, on February 6, 1999, the Nation filed a lawsuit against Peabody in the United States District Court for the District of Columbia. The complaint was filed *ex parte* and under seal and was never served on Peabody. The Nation subsequently acknowledged in the Court of Federal Claims that the district court complaint was based, in part, on the contents of the Sullivan memorandum. On June 9, 1999, the Nation filed in the district court an amended, public version of its complaint against Peabody that did not rely on the Sullivan memorandum. Based on the pub-

lic complaint, Peabody became aware of the earlier, sealed complaint filed by the Nation and the fact that the sealed complaint may have referred to information produced by Peabody in the Court of Federal Claims that may have been subject to the CAPO. Thereafter, Peabody moved in the Court of Federal Claims to hold the Navajo Nation and its counsel, Paul E. Frye, in contempt. Additionally, Peabody sought the imposition of sanctions for the Nation's use of the Sullivan memorandum in the complaint it had filed in district court.

The Court of Federal Claims determined that the Navajo Nation had substantially complied with the CAPO and thus should not be held in contempt. *Navajo Nation,* 46 Fed. Cl. at 358–61. The court determined that, although the Nation had technically violated the CAPO, *id.* at 358, its actions did not rise to the level of misconduct required to establish civil contempt, *id.* at 358–61. The court concluded that the CAPO was designed to protect business confidential, proprietary information, not information that was subject to the attorney-client or the attorney work product privilege. *Id.* at 359–60. The court also concluded that the Order and the Stipulation further established that the purpose of the CAPO was to protect proprietary information, not privileged information. *Id.* at 360. The court reasoned that the Nation's use of the Sullivan memorandum was a *de minimis* violation of the CAPO because the use was in connection with an *ex parte* complaint that was only seen by a federal judge and some district court employees. *Id.* at 361. For these reasons, the court did not hold the Nation in contempt. *Id.* at 362.

---

1. The parties agree that the Sullivan memorandum does not contain business confiden-

tial, proprietary information.

### III.

To establish civil contempt, the moving party must demonstrate that: (1) the offending party violated an order of the court; (2) the violation was more than *de minimis* or technical noncompliance; and (3) the conduct was not the product of a good faith or reasonable interpretation of the order. 7 James Wm. Moore et al., *Moore's Federal Practice* ¶ 37.51[7][b] (3d ed.1999). Civil contempt must be proven by clear and convincing evidence, *Glaxo, Inc. v. Novopharm, Ltd.,* 110 F.3d 1562, 1572 (Fed.Cir.1997), and a court cannot hold a party in contempt if there is a "fair ground of doubt as to the wrongfulness of the [party's] actions," *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.,* 803 F.2d 1170, 1173 (Fed.Cir.1986). We review a lower court's grant or denial of a civil contempt motion for an abuse of discretion. *MAC Corp. of Am. v. Williams Patent Crusher & Pulverizer Co.,* 767 F.2d 882, 885 (Fed.Cir.1985).

Peabody argues that the Court of Federal Claims committed legal error in concluding that the Navajo Nation substantially complied with the CAPO and the following Order and Stipulation. First, Peabody asserts that regardless of whether the CAPO and the Order and Stipulation protected privileged information, the Sullivan memorandum was protected because it was marked as confidential and was filed pursuant to the terms of the CAPO. Therefore, Peabody contends, the Nation's use of the memorandum in another suit, without a prior ruling by the Court of Federal Claims removing the document's confidential designation, constituted civil contempt. Second, Peabody argues that the Nation did not substantially comply with the CAPO and the Order and Stipulation because they protected both proprietary and privileged material. The Nation responds by arguing that if it did violate the CAPO and the Order and Stip-

ulation, its violation was technical or *de minimis*. The Nation asserts that privileged information, such as the Sullivan memorandum, was not protected. The Nation contends that the CAPO and the Order and Stipulation established a distinction between proprietary and privileged information, only barring the use of proprietary information outside the Nation's lawsuit against the government. The Nation and its counsel therefore contend that they substantially complied with the court's orders.

The Navajo Nation's use of the Sullivan memorandum in the complaint it filed in the district court was a violation of the CAPO. The CAPO stated that documents stamped or marked with the word "CONFIDENTIAL" under the order were "not [to] be furnished, shown or disclosed to any person except designated legal counsel for a party ... and under no circumstances [were to] be made available to any party, officer, director or employee of any party or any other person or entity except [designated experts or consultants]." Peabody stamped the Sullivan memorandum "CONFIDENTIAL" and explicitly filed the document under the terms of the CAPO. Regardless of whether the memorandum was the type of document the CAPO was drafted to protect, the Nation was required to have the Court of Federal Claims remove the document's confidential designation before using it in another lawsuit. The Nation failed to obtain such a ruling. Thus, the Nation's use of the Sullivan memorandum outside its litigation against the government was violation of a court order.

However, we see no error in the Court of Federal Claims' ruling that the Navajo Nation's violation was only technical or *de minimis*. Put another way, the Nation substantially complied with the CAPO and the following Order and Stipulation. The

main purpose of the CAPO was to facilitate Peabody's production of information that it considered proprietary "for its exclusive use in this litigation." The CAPO indicated that Peabody was to designate as confidential any information it believed "constitute[d] proprietary information, confidential business information, cost and profit data or trade secrets relating to [its] business[ ]" and to then file it as confidential. The CAPO was not meant to provide similar protection for privileged information. The CAPO did not indicate that privileged information could not be used in other litigation or that such information should be marked as confidential. The CAPO's only references to privileged information indicated that Peabody could claim that certain documents were privileged and that inadvertent or unintended disclosure of privileged information would not constitute waiver of that privilege. Notably, the CAPO referred to confidential and privileged information as two separate categories of information, discussing the impact of inadvertent disclosure of the two types of information in two separate paragraphs.

The Order and the Stipulation did not change the CAPO's purpose. The Order indicated that Peabody could assert claims of privilege to certain documents, providing a privilege log in their place, and that production of documents would not constitute waiver of Peabody's ability to assert that those documents were privileged in another case. Peabody is correct that the Order indicated that "Peabody may stamp documents 'confidential' prior to their production," but this language did not mean that the CAPO was being amended to allow for privileged documents to enjoy the same protections as proprietary documents. We agree with the Court of Federal Claims that the indicated language only reiterated the fact that Peabody could assert that certain documents were confidential if Peabody considered them to be confidential pursuant to the terms of the CAPO, *i.e.*, if the documents were proprietary. The Stipulation's only discussion of privileged documents indicated, as the Order did, that production of privileged documents would not constitute a waiver of the privilege.

Thus, the primary purpose of the CAPO and the following Order and Stipulation was to protect proprietary information, not privileged information. The Sullivan memorandum was not proprietary, and, therefore, the Navajo Nation's use of the memorandum in an *ex parte* complaint filed under seal did not thwart a purpose behind any of the Court of Federal Claims' several orders. Under these circumstances, we are not prepared to say that the Court of Federal Claims erred in concluding that the Nation and its counsel were not in contempt. *See In re Dual–Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 694–95 (9th Cir. 1993) (finding no civil contempt because the disclosure of information covered by a protective order in another lawsuit was only a "technical violation[ ]" that did not violate the order's purpose—to protect proprietary information).

Further supporting the Court of Federal Claims' decision is the manner in which the Navajo Nation relied on the Sullivan memorandum's contents. The Nation used the memorandum in an *ex parte* compliant that was filed under seal and never served on Peabody. As the Court of Federal Claims noted, the "only persons to whom [the document's] contents are 'disclosed' are another federal judge (perhaps) and a few court employees, if that." *Navajo Nation*, 46 Fed. Cl. at 361. The Nation substantially complied with the Court of Federal Claims' orders because, in the words of the Ninth Circuit in *Dual–Deck*, it "went to great lengths to avoid revealing in the public filings [in the sec-

ond suit] anything it had learned in discovery" in the first suit, 10 F.3d at 695–96.

For the foregoing reasons, we hold that the Court of Federal Claims' did not abuse its discretion in denying Peabody request to hold the Navajo Nation and its counsel in civil contempt. We therefore affirm the court's decision.

Each party shall bear its own costs.