**MISSION CRITICAL SOLUTIONS,**
**Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 09–864 C.**

United States Court of Federal Claims.

March 12, 2012.

John R. Tolle, McLean, VA, for plaintiff. Bryan R. King, McLean, VA, of counsel.

Steven M. Mager, Washington, DC, with whom were Stuart Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant

Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Lt. Col. Dana J. Chase, Chief, Trial Team III, Contract & Fiscal Law Division, United States Army Legal Services Agency, Washington, DC, of counsel.

## OPINION AND ORDER

HEWITT, Chief Judge.

On February 26, 2010 the court decided this bid protest case brought by plaintiff Mission Critical Solutions (plaintiff or MCS), holding that "[t]he Army's award of the [information technology (IT) ] support services contract on a sole-source basis without first determining whether it should set aside the contract for restricted competition among qualified HUBZone small business concerns was not in accordance with law." *Mission Critical Solutions v. United States (Mission Critical I* ), 91 Fed.Cl. 386, 412 (2010). The court determined that plaintiff had met the standard for both declaratory and injunctive relief, and accordingly "order[ed] defendant to determine whether the criteria of 15 U.S.C. § 657a(b)(2)(B) are met, such that the contract opportunity at issue in this case must be awarded on the basis of competition among qualified HUBZone small business concerns." *Id.* The court also "enjoin[ed] the United States from awarding the IT support services contract at issue in a manner that is not in compliance with the Small Business Act as the court here interprets it." *Id.* Plaintiff now moves to enforce the court's Order of February 26, 2010.

Before the court are Plaintiff Mission Critical Solutions' Motion to Enforce the Order of the Court (Pl.'s Mot.), Docket Number (Dkt. No.) 35, and plaintiff's Memorandum in Support of Mission Critical Solutions' Motion to Enforce the Order of the Court (Pl.'s Mem.), Dkt. No. 35-1, both filed August 9, 2011; Defendant's Response to Plaintiff's Motion to Enforce (Def.'s Resp.), Dkt. No. 38, filed September 2, 2011; Plaintiff's Reply

to Defendant's Response to Plaintiff's Motion to Enforce (Pl.'s Reply), Dkt. No. 39, filed September 12, 2011; and Defendant's Sur-Reply in Opposition to Motion to Enforce (Def.'s Sur-Reply), Dkt. No. 42, filed September 30, 2011.

On January 18, 2012 the court ordered the parties to provide supplemental briefing on the question of "whether Contract Number W91WAW–11–C–0027 is a 'new' contract or whether it is, in effect, the same contract as Contract Number W91WAW–09–R–0027, which was the subject of plaintiff's bid protest in the first instance." Order of Jan. 18, 2012, Dkt. No. 43 (citation omitted). Also before the court are the parties' opening briefs on this question, both filed February 6, 2012: Plaintiff's Supplemental Brief in Support of Plaintiff's Motion to Enforce (Pl.'s Br.), Dkt. No. 46; Defendant's Supplemental Brief (Def.'s Br.), Dkt. No. 47; and the parties' responsive briefs, both filed February 13, 2012: Plaintiff's Response to Defendant's Supplemental Brief (Pl.'s Supp. Resp.), Dkt. No. 48, and Defendant's Response to Plaintiff's Supplemental Brief (Def.'s Supp. Resp.), Dkt. No. 49.

## I. Background

### A. Prior Proceedings

Plaintiff filed its initial Complaint in this case on December 15, 2009 alleging that the United States Army (Army or defendant) improperly made an 8(a) sole source contract award without first making a determination under the HUBZone statute as to whether a set aside for HUBZone small business concerns was required, thereby depriving MCS of the opportunity to compete for the award. *See Mission Critical I*, 91 Fed.Cl. at 391–92; Def.'s Resp. 8.[1] At the time it filed its Complaint, MCS was "both an 8(a) program participant and a qualified Historically Underutilized Business Zone (HUBZone) small business." *Mission Critical I*, 91 Fed.Cl. at 390.

---

1. In addition to citing its previous opinion to support the relevant facts, the court also relies on the uncontested portions of the factual background found in Defendant's Response to Plaintiff's Motion to Enforce (defendant's Response).

*See* Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. to Enforce (Pl.'s Reply), Docket Number (Dkt. No.) 39, at 3–6 (indicating agreement with the relevant portions of defendant's factual summary).

The HUBZone statute in effect at that time provided:

> Notwithstanding any other provision of law—
>
> . . . .
>
> (B) a contract opportunity *shall be awarded* pursuant to this section on the basis of competition restricted to qualified HUBZone small business concerns if the contracting officer has a reasonable expectation that not less than 2 qualified HUBZone small business concerns will submit offers and that the award can be made at a fair market price. . . .

15 U.S.C. § 657a(b)(2) (2006) (emphasis added), *amended by* 15 U.S.C. § 657a(b)(2) (Supp.2010). The court concluded that the portions of the statute which read, "Notwithstanding any other provision of law" and "shall be awarded," when read together, indicated that "the statutory language is mandatory and that the plain meaning of the HUBZone statute requires a contract opportunity to be competed among qualified HUBZone small business concerns whenever the specified criteria are met, notwithstanding other provisions of law—including those found within the Small Business Act itself." *Mission Critical I*, 91 Fed.Cl. at 402–03. The court sustained MCS's protest and found that MCS had satisfied the four-factor test for permanent injunctive relief. *Id.* at 410–12; *cf. eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) (describing the four-part test for grant of a permanent injunction). Accordingly, on February 26, 2010 the court "order[ed] defendant to determine whether the criteria of 15 U.S.C. § 657a(b)(2)(B) are met, such that the contract opportunity at issue in this case must be awarded on the basis of competition among qualified HUBZone small business concerns," and "enjoin[ed] the United States from awarding the IT support services contract at issue in a manner that is not in compliance with the Small Business Act as the court here interprets it." *Mission Critical I*, 91 Fed.Cl. at 412.

**B. Post–Protest Factual Developments**

Defendant appealed this court's Order of February 26, 2010, Def.'s Resp. 9, but subsequently withdrew the appeal on November 15, 2011 after the passage and signing of the Small Business Jobs Act of 2010 (the Act), *id.* at 9–10; *see also* Small Business Jobs Act of 2010, Pub.L. No. 111–240, § 1347(b)–(c), 124 Stat. 2504, 2547 (codified at 15 U.S.C. § 657a). The Act amended the language that the court relied upon in *Mission Critical I*, and the relevant provision now states:

> A contract opportunity may be awarded pursuant to this section on the basis of competition restricted to qualified HUBZone small business concerns if the contracting officer has a reasonable expectation that not less than 2 qualified HUBZone small business concerns will submit offers and that the award can be made at a fair market price.

15 U.S.C. § 657a(b)(2)(B) (Supp. 2010). Congress removed the initial portion of section (b)(2) that once read "Notwithstanding any other provision of law," and replaced the word "shall" with the word "may" in section (b)(2)(B). *See* 124 Stat. at 2547. The United States Small Business Administration (SBA) issued amended regulations on October 7, 2010 (which went into effect in February 2011) in part to address amendments made by the Act. Def.'s Resp. 10; *see also* Women-Owned Small Business Federal Contract Program, 75 Fed.Reg. 62,258 (Oct. 7, 2010).

During the pendency of the bid protest litigation, plaintiff performed the IT services at issue under a sole-source bridge contract, No. W91WAW–10–C–0005, Pl.'s Reply 4, awarded on December 7, 2009, *Mission Critical I*, 91 Fed.Cl. at 392; *see also* Pl.'s Mem. 2. That bridge contract expired on August 6, 2010. Pl.'s Reply 4. The Army then awarded plaintiff a sole-source HUBZone contract, No. W91WAW–10–C–0067, *id.*, with a performance period of August 7, 2010 to August 20, 2010, and a small business set-aside contract, No. W91WAW–10–C–0072, which was set to expire on January 5, 2011, Pl.'s Mem. 2, Ex. A (August 20, 2010 Bridge Contract), but was modified on January 5, 2011 to extend through July 4, 2011, *id.* at 3; *see also id.* at Ex. C (January 5, 2011 Modification).

"On October 29, 2010 the SBA notified MCS that it had been de-certified and removed from the list of qualified HUBZone [small business concerns] because it does not meet and has not met the requirement that at least 35% of its employees reside in a HUBZone." *Mission Critical Solutions v. United States (Mission Critical II)*, 96 Fed. Cl. 657, 661 (2011) (internal quotation marks omitted). MCS's protest in this court of the SBA's decertification decision was denied. *Id.* at 666.

On December 28, 2010 defendant sent MCS a letter informing it that upon the set expiration of contract W91WAW–10–C–0072 on January 5, 2011, "[t]he Army intends to award for the OTJAG Information Technology requirement to Copper River [Information Technology, LLC (Copper River) ]," an 8(a) small disadvantaged business. Pl.'s Mem. Ex. B (December 28, 2010 Letter); *see also* Def.'s Resp. 10. However, the Army instead entered into a contract modification with MCS that extended the August 20, 2010 contract through July 4, 2011. Pl.'s Mem. 3; *see also id.* at Ex. C (January 5, 2011 Modification). Further, on August 4, 2011, the Army awarded a one-year firm fixed price contract to Copper River. Def.'s Resp. 11, Def.'s App.[2] 16–54. Then, on August 9, 2011, plaintiff filed its Motion to enforce the court's February 26, 2010 Order, contending that the 2011 Contract award to Copper River violated the injunction contained in the court's Order of February 26, 2010. *See generally* Pl.'s Mot.; Pl.'s Mem.; *Mission Critical I*, 91 Fed.Cl. at 412.

## II. Legal Standards

### A. Motion to Enforce

Several sources of authority enable the court to impose sanctions or remedies on a party who does not comply with its orders. The two sources of authority relevant in the context of a failure to comply with an injunction are, first, 28 U.S.C. § 2521(b)(3) (2006), which grants the court power to hold parties

in civil contempt, and, second, the court's inherent authority to sanction a party or attorney who willfully disobeys its orders. *See generally Pac. Gas & Elec. v. United States*, 82 Fed.Cl. 474, 483–84 (2008).

 Title 28, Section 2521(b) of the United States Code provides:

> The United States Court of Federal Claims shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority as—
>
> . . . .
>
> (3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

28 U.S.C. § 2521(b). Although the court "possess[es] the authority to hold litigants accountable for failing to adhere to instruction, the court does not exercise its enforcement authority lightly," *Filtration Dev. Co. v. United States*, 63 Fed.Cl. 418, 421 (2005), because "[c]ivil contempt . . . is recognized as a severe remedy," *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1172 (Fed.Cir.1986). A party alleging a violation of a court order must establish by clear and convincing evidence, *Filtration Dev. Co.*, 63 Fed.Cl. at 421, that: " '(1) the offending party violated an order of the court; (2) the violation was more than de minimis or technical noncompliance; and (3) the conduct was not the product of a good faith or reasonable interpretation of the order,' " *ViroMed Labs., Inc. v. United States*, 87 Fed.Cl. 493, 500 (2009) (quoting *Navajo Nation v. Peabody Coal Co.*, 7 Fed.Appx. 951, 955 (Fed.Cir.2001) (unpublished) (citing 7 James Wm. Moore et al., *Moore's Federal Practice* ¶ 37.51[7][b] (3d ed. 1999))). However, "[t]he contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *Go–Video, Inc. v. Motion Picture Ass'n of Am.*, 10 F.3d 693, 695 (9th Cir.1993) (citing *Crystal Palace Gambling Hall, Inc. v. Mark Twain Indus., Inc.*, 817 F.2d 1361, 1365 (9th Cir.1987)); *see also McComb v. Jacksonville*

---

**2.** Defendant attaches a separately paginated appendix to its Response, *see* Def.'s Resp. to Pl.'s Mot. to Enforce (Def.'s Resp.), Dkt. No. 38, at 2 n. 1, which the court will cite as Def.'s App. using the page numbers provided by defendant.

Defendant also attaches a separately paginated appendix to Defendant's Supplemental Brief (Def.'s Br.), Dkt. No. 47, at 2 n. 1, which the court will cite as Def.'s Supp.App. using the page numbers provided by defendant.

*Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949) (noting that "[t]he absence of wilfulness does not relieve from civil contempt" and that "[a]n act does not cease to be a violation of a law and of a decree merely because it may have been done innocently").[3] "[A] party will not be held in contempt if 'there is a fair ground of doubt as to the wrongfulness of [the party's] conduct. . . .' " *Savantage Fin. Servs., Inc. v. United States*, 86 Fed.Cl. 700, 704 (2001 [2009]) (second alteration and ellipsis in original) (quoting *MAC Corp. of Am. v. Williams Patent Crusher & Pulverizer Co.*, 767 F.2d 882, 885 (Fed.Cir.1985)), *aff'd*, 595 F.3d 1282 (Fed.Cir. 2010).

**B. Standing**

 Standing presents a threshold issue of justiciability that the court must examine before addressing the substance of plaintiff's claims. *See Juidice v. Vail*, 430 U.S. 327, 331, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Smith v. United States*, 28 Fed.Cl. 430, 436 (1993) ("As a threshold matter, the court must first address . . . whether plaintiff has standing."). In order to meet the constitutional requirement of standing, a plaintiff must show: (1) that he has suffered an "injury in fact" which is concrete and particularized as well as actual or imminent, (2) that there is "a causal connection between the injury and the conduct complained of," and (3) that it is " 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). Specifically, with regard to standing to bring an action to enforce the court's injunction, the United States Supreme Court (Supreme Court) has held that "[a] party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment" and therefore "ha[s] standing to seek its vindication." *Salazar v. Buono (Buono)*, —— U.S. ——, 130 S.Ct. 1803, 1814–15, 176 L.Ed.2d 634 (2010) (citing *Allen v. Wright*, 468 U.S. 737, 763, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (describing how plaintiffs in *Norwood v. Harrison*, 413 U.S. 455, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973) acquired a judicially cognizable right to enforce a school-segregation decree "because it was a personal interest, created by law, in having the State refrain from taking specific actions")).

**III. Discussion** [4]

Plaintiff moves for enforcement of the court's injunction imposed in its Order of

---

**3.** The court notes the apparent tension between plaintiff's burden to show by clear and convincing evidence that defendant's "conduct was not the product of a good faith or reasonable interpretation of the order," *Navajo Nation v. Peabody Coal Co.*, 7 Fed.Appx. 951, 955 (Fed.Cir.2001) (unpublished), and the language of the United States Supreme Court (Supreme Court) that "it matters not with what intent the defendant did the prohibited act," *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949). However, the court interprets the third prong of the *Navajo Nation* test to mean that plaintiff must prove that defendant's conduct cannot be reconciled with a reasonable interpretation of the court's order, an inquiry that need not address whether defendant willfully or intentionally violated the order.

**4.** The court notes the decisions of the Supreme Court that state that "[w]here legislative action has undermined the basis upon which relief has previously been granted, a court must consider whether the original finding of wrongdoing continues to justify the court's intervention." *Salazar v. Buono*, —— U.S.——, 130 S.Ct. 1803, 1818, 176 L.Ed.2d 634 (2010) (citing *Sys. Fed'n No. 91, Ry. Emps. Dep't v. Wright*, 364 U.S. 642, 648–49, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961); *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 430–32, 15 L.Ed. 435 (1855)). Upon a motion by defendant, it may well have been appropriate for the court to dissolve or modify the injunction at issue in this case because of the change to the HUBZone statute. *See* Rules of the Court of Federal Claims (RCFC) 60(b). It is unclear whether, under the law of this circuit, it might also have been appropriate for the court to consider sua sponte whether relief from judgment under RCFC 60(b) would be appropriate. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1359 n. 1 (Fed. Cir.2006) (noting that, although it was proper for the district court to amend its findings upon a timely filed motion under Rule 52(b), "the district court on its own motion could have granted relief from judgment under Rule 60(b)(6)" and citing favorably cases from other circuits that hold that a court may grant 60(b) relief sua sponte); *Young v. United States*, 60 Fed.Cl. 418, 427 (2004) (noting the circuit split on the question of whether a court may order 60(b) relief

February 26, 2010. Pl.'s Mot.; *see also Mission Critical I*, 91 Fed.Cl. at 412. Plaintiff contends that the Army is violating the terms of the court's injunction because "[t]he Army has not made any efforts to follow the Court's instructions to determine whether the criteria of 15 U.S.C. § 657a(b)(2)(B) are met, such that the contract opportunity at issue should be awarded on the basis of competition among qualified HUBZone small businesses." Pl.'s Mem. 3. Plaintiff argues that a subsequent change to the statute that the court interpreted in its February 26, 2010 Order, "which removes the requirement for the determination of whether a HUBZone set-aside is appropriate ... does not affect the injunction issued by the Court in its decision" because the new statute does not have retroactive effect upon the contract for procurement of IT services which was the subject of the court's injunction. *Id.* at 5.

Defendant responds that plaintiff "has not met its burden" to show by clear and convincing evidence that defendant violated the court's injunction, that the violation was more than de minimis and that any violation was not the product of a good faith or reasonable interpretation of the court's Order. Def.'s Resp. 12. Defendant argues that the "Army issued a new award in August 2011," *id.* (emphasis added), and that because the court's injunction was limited to " 'the contract at issue,' " *id.* at 14, the court "barred action based upon the Court's interpretation of the unamended statute; it did not purport to enjoin the Army from applying any

amendments to the language of the Act to future award decisions," *id.* at 12. Defendant argues that it is merely "seeking to apply existing law to a new contract for IT services." *Id.* at 16. According to defendant, "Even if the Court were to find that the Army violated its Order, the Army's actions still were taken in good faith and were based upon a reasonable interpretation of the Court's order and existing law." *Id.* at 17. Defendant further argues that the court lacks jurisdiction to consider plaintiff's Motion because plaintiff is no longer a qualified HUBZone small business concern and therefore lacks standing, *id.* at 19, and because plaintiff's Motion is moot insofar as "the Small Business Act has been amended, [and] the Army cannot repeat the same violation of law that the Court held to have been committed in this case," *id.* at 20.[5]

### A. Plaintiff Has Standing to Bring An Action to Enforce the Court's Injunction

Defendant argues that plaintiff lacks standing to bring a motion to enforce the court's injunction because plaintiff is no longer a qualified HUBZone small business concern. Def.'s Resp. 19. Defendant argues that because more stringent standing requirements apply to bid protests, plaintiff, even if it seeks to enforce this court's order, must meet the stringent bid protest standing requirements. *Id.* In other words, defendant contends that plaintiff "must be an 'actual or

---

sua sponte and holding that it was appropriate to vacate a judgment under Rule 60(b) sua sponte). *But see* 12 James Wm. Moore et al., *Moore's Federal Practice* ¶ 60.62 (3d ed. 2004) (noting that "in almost every case, a court may not grant relief under Rule 60(b) sua sponte, in the absence of a motion" and citing cases from circuits that hold that a court may not grant sua sponte relief under Rule 60(b)). Because of the uncertainty as to whether sua sponte relief under RCFC 60(b) is appropriate, the court declines to dissolve or modify the injunction in the absence of a motion by defendant and instead considers whether defendant violated the court's injunction.

**5.** The court finds that the case is not moot. " 'Simply stated, a case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' " *Cnty. of L.A. v. Van Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (quoting *Pow-*

*ell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). Defendant argues that the case is moot because, in the future, defendant could not repeat the violation of the Small Business Act that was at issue in this bid protest because of the amendments to the Small Business Act. Def.'s Resp. 20. However, whether or not defendant could repeat the violation in the future has no bearing on whether defendant violated the court's injunction in this case. In other words, the controversy is still "live" here because plaintiff's Motion to enforce presents the question of whether the court's 2010 injunction applies to the 2011 contract award to Copper River. If the court were to determine that its injunction applied to the 2011 contract, then it could find that plaintiff is entitled to enforcement of the court's Order, regardless of whether the violation was capable of repetition.

prospective bidder whose direct economic interest would be affected by the award of the contract or by the failure to award the contract.'" *Id.* (quoting *Am. Fed'n of Gov't Emps. v. United States,* 258 F.3d 1294, 1302 (Fed.Cir.2001)). According to defendant, plaintiff "must demonstrate that 'there was a "substantial chance" that it would have received the contract award but for the alleged error in the procurement process.'" *Id.* (quoting *Info. Tech. & Applications v. United States,* 316 F.3d 1312, 1319 (Fed.Cir. 2003)).

Plaintiff argues that it does have standing because "[t]his is not a new action; it is not a new bid protest that is subject to the stringent requirements of 28 U.S.C. § 1491." Pl.'s Reply 10. The court agrees.

■■■ Plaintiff here does not seek to bring a new bid protest action to challenge the agency's award of Contract Number W91WAW–11–C–0027 to Copper River. Instead, plaintiff seeks to enforce the court's injunction imposed in a previous action in which it was a party and had standing. *See generally Mission Critical I,* 91 Fed.Cl. 386. The Supreme Court has held that "[a] party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment." *Buono,* 130 S.Ct. at 1814–15. Here, where plaintiff obtained a final judgment on its claims in *Mission Critical I,* 91 Fed.Cl. 386, which provided the basis for the court's injunction, there can be no doubt that plaintiff now "ha[s] standing to seek its vindication." *See Buono,* 130 S.Ct. at 1815. The relevant inquiry where a party to a bid protest seeks to enforce the court's injunction cannot be the stringent standing inquiry required under section 1491(b), but rather is the ordinary Article III standing inquiry applied to any party seeking to enforce an order of the court. If a plaintiff lost its standing to enforce a court order in its favor merely because of a change in its status that would prevent it from bringing a new bid protest, the ability of a successful bid protest plaintiff to enforce the court's orders would be undermined. In particular, plaintiff need not demonstrate that it has a "substantial chance" of award in a procurement competition in order

to bring suit to enforce a prior court order, but instead need only establish that it has Article III standing.

Plaintiff has met the requirements for Article III standing. If defendant is, in fact, violating the court's injunction entered in plaintiff's favor, this would be an "injury in fact" which is both concrete and particularized and actual or imminent. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. Defendant's conduct in violating the injunction would result in the injury to plaintiff and it is likely that a judgment in plaintiff's favor, in other words, a contempt order by the court if a violation were proven, would redress plaintiff's injury. *See id.* Plaintiff therefore has standing to bring this motion to enforce the injunction.

B. Plaintiff Has Not Met Its Burden to Establish a Violation of the Court's Injunction

1. The Army Did Not Violate the Court's Injunction Because the Scope of the Prior Injunction Did Not Encompass the New Contract Issued to Copper River

■■■ A party alleging a violation of a court order must establish by clear and convincing evidence, *Filtration Dev. Co.,* 63 Fed. Cl. at 421, that " 'the offending party violated an order of the court,' " *ViroMed Labs., Inc.,* 87 Fed.Cl. at 500 (quoting *Navajo Nation,* 7 Fed.Appx. at 955). Whether or not defendant violated the court's February 2010 injunction depends in large part on whether the 2011 contract is a new procurement—to which the current law would apply, *see Hawpe Constr., Inc. v. United States,* 46 Fed.Cl. 571, 580 (2000) ("Any new bidding process would be in accord with the publicly available ... regulations in effect at the time the RFP was issued.")—or is the same contract or procurement that was the subject of the bid protest. In other words, because the injunction applies to "the contract at issue," it is important to determine whether the 2011 contract awarded to Copper River should be considered the contract at issue in the bid protest or should be considered a new contract.

In their supplemental briefs, plaintiff and defendant explain their views as to whether or not Contract Number W91WAW–11–C–0027, the contract awarded to Copper River, see Def.'s App. 16, is a "new" contract or procurement or whether it is, in effect, the same as Solicitation Number W91WAW–09–R–0027,[6] which was the subject of plaintiff's bid protest, Pl.'s Reply 8.

Plaintiff contends that the 2011 contract with Copper River "is the same contract as the 2009 Contract." Pl.'s Br. 2. Plaintiff relies on cases that it describes as determining whether an attempted contract modification was in fact a modification or should be treated as a new procurement. See id. at 2–4. Under those cases, plaintiff argues, the proper analysis is to compare the scope of the original procurement to the scope of the modification, id. at 4, and the " 'best means of understanding the scope of the solicitation is to study the statement of work and analyze its requirements,' " id. at 3 (quoting Fulcra Worldwide, LLC v. United States, 97 Fed.Cl. 523, 538 (2011)). Plaintiff applies that analysis by comparing the provisions of the performance work statement (PWS) in the 2009 solicitation and the 2011 contract and concludes that "the PWS in each contract is basically the same, with only slight differences." Pl.'s Br. 6. Plaintiff notes that many portions of the two PWSs are identical or nearly identical, including the description of services, objectives, scope and specific tasks. See id. at 6–11. According to plaintiff, the cases regarding contract modifications direct that the court find the 2011 contract to be the same procurement on the basis that the two PWSs are identical. Id. at 6.[7]

---

6. Defendant points out that, because a contract was never awarded to Copper River prior to the 2009 bid protest, the number which the court referred to in its supplemental briefing order as "Contract Number W91WAW–09–R–0027," Order of Jan. 18, 2012, Dkt. No. 43, at 2, was in fact a Solicitation Number, Def.'s Br. 2. Defendant states that "[t]o the extent that the Court seeks to compare a 2009 procurement instrument associated with the prior protest with contract number W91WAW–11–C–0027 [2011 Contract] . . . it should focus upon" a draft contract that was in the Army's files for the 2009 procurement, with a procurement instrument identification (PII) number of W91WAW–09–C–0021. Id. at 3–4. Because plaintiff agrees that it is proper to look to the draft contract, Pl.'s Resp. to Def.'s Supplemental Br. (Pl.'s Supp. Resp.), Dkt. No. 48, at 2 ("[I]t does not matter whether the 2009 procurement is Solicitation No. W91WAW–09–R–0021 or the 2009 Draft Contract."), the court will use the draft contract, PII number W91WAW–09–C–0021, as the proper representation of the 2009 procurement in comparing the two procurements.

7. Plaintiff also points to several statements by individuals involved in the procurement, which, plaintiff argues, suggest that they viewed the 2009 solicitation and the 2011 contract as the same procurement. Pl.'s Supplemental Br. in Support of Pl.'s Mot. to Enforce (Pl.'s Br.), Dkt. No. 46, at 11–13. For instance, plaintiff points to:
(1) A letter from Timothy Lower, a Contracting Officer for the Army, to plaintiff stating that "[t]he Army intends to award for the OTJAG Information Technology requirement to Copper River 8(a)." Id. at 11 (quoting Pl.'s Mem. Ex. B).
(2) A statement by the Army's Assistant Associate Director in the Office of Small Business Pro-

grams to the Small Business Administration (SBA) that "[t]he previous contractor for this action was MCS of Tampa, Inc., an 8(a) firm." Id. (alteration in original) (quoting Def.'s App. 11).
(3) A statement by Christine Epps, another contracting officer, which, plaintiff argues, "acknowledged that this Court's order applied until, in her words, 'the law was changed' " and that plaintiff interprets to mean that "she agrees that the Court's order did apply to the last five contracting actions, just not to the 2011 Contract." Id. at 12 (quoting Def.'s App. 55).
(4) A statement that appears in the SBA Business Coordination Record in reference to the 2011 contract that "[t]his requirement was awarded to the below 8(a) small business but the award was protested. The protest has now been overruled and we have received legal concurrence that this requirement can be awarded." Id. at 12–13 (quoting Def.'s App. 15).
The court does not find these statement persuasive. Absent a contention by plaintiff that the government is estopped on the basis of statements by its employees from asserting that the 2011 procurement is a new procurement, it is not clear to the court that the statements of government employees who appear to work primarily in a non-legal capacity regarding whether the 2009 and 2011 procurements were the same are relevant to the legal determination of whether the two procurements are the same. In context, the statements referring to the 2009 solicitation and the 2011 contract as the same "requirement" or same "action" appear to suggest that the procurements were designed to meet the same need, a conclusion that has little bearing on the question of whether those services were obtained with the same procurement or the same contract.

Defendant argues that the 2011 Contract with Copper River is a different document from the 2009 draft contract numbered W91WAW–09–C–0021. Defendant points to the fact that the "2009 and 2011 procurements, representing two different acquisitions, have two separate small business coordination records," which resulted from the agency's notification to the SBA "of its plans to place an 8(a) contract with SBA for specific quantities or items of work." *See* Def.'s Br. 8 (citing 48 C.F.R. § 19.804–2). Defendant also points out that while the 2009 request to the SBA was for a requirement "above the $3.5 million competitive threshold," because the threshold requirements changed in 2010, in its new request to SBA for the 2011 procurement, the Army sought approval consistent with the new $4 million competitive threshold. *See id.* at 8–9. Defendant points to the different solicitation numbers associated with each procurement and asserts that the 2009 and 2011 procurements "involved different types of contracts." *Id.* at 9–10. In particular, defendant argues that the 2009 procurement was for a time and materials contract, whereas the 2011 contract is a firm fixed price contract. *Id.* at 10. Defendant also notes other differences between the two procurements, including differences in the award amount, *id.* at 10, start date, *id.* at 11, duration, *id.*, the number and type of personnel required, *id.* at 12, and the location where services are to be performed, *id.* at 13. Defendant also argues that the funding sources for the two procurements differ because the two procurements were funded with two different draft purchase requests. *Id.* at 11.

The court agrees with defendant that the 2011 contract award to Copper River is a new contract or a new procurement to which

this court's 2010 injunction relating to "the contract at issue" does not apply.

Although relevant, the inquiry into whether a procurement is a new procurement cannot begin and end with the PWS as plaintiff suggests. A court must undoubtedly look to the scope of a contract's PWS and compare it to the PWS in a proposed modification in determining whether that modification may properly be part of the original contract or must be considered a new procurement.[8] However, in this case, the court is concerned with whether the whole procurement is the same or different, an inquiry which requires the court to examine additional factors. The fact that the government continues to require the same or very similar services as described in more than one PWS cannot be dispositive, because the government will often procure the same services over time in a variety of different contracts. *See, e.g.,* Exec. Order No. 13495, 74 Fed.Reg. 6103 (Feb. 4, 2009) (noting that upon the expiration of a service contract, a follow-on contract may be awarded for the same services at the same location). On the facts of this case, the court must consider all relevant factual differences and not confine itself to the PWS. For instance, the length of time between the conclusion of the two contracts may be relevant to whether the contracts are the same or different; the longer the span in time, the more likely that the contracts are different, notwithstanding that the PWSs and the services to be procured might be identical. Whether a contract is the same as or different from a later-concluded contract is an intensely factual inquiry that will depend upon a comparison of the two contracts in question and any relevant circumstances surrounding the formation of the two contracts. *Cf. Green Mgmt. Corp. v. United States,* 42 Fed.Cl. 411, 430 (1998) (noting that the existence of a cardinal change[9] to a contract

---

8. Even in the context of determining whether a proposed modification is actually a new procurement, courts appear not to have limited their consideration strictly to the performance work statement. *See, e.g., Ceradyne, Inc. v. United States,* 103 Fed.Cl. 1, 13 (2011) (noting that, in determining whether a modification is in fact a new procurement, courts have considered, *inter alia,* " 'whether the solicitation for the original contract adequately advised offerors of the potential for the type of changes during the course of the contract that in fact occurred, or whether the

modification is of a nature which potential offerors would reasonably have anticipated,' " which might include consideration of materials outside of the performance work statement (quoting *AT & T Commc'ns, Inc. v. Wiltel, Inc.,* 1 F.3d 1201, 1207 (Fed.Cir.1993))).

9. The cardinal change doctrine is described in *Black's* as "[t]he principle that if the government makes a fundamental, unilateral change to a contract beyond the scope of what was originally contemplated, the other party ... will be re-

through a contract modification " 'is principally a question of fact, requiring that each case be analyzed individually in light of the totality of circumstances' " (quoting *Allied Materials & Equip. Co. v. United States*, 215 Ct.Cl. 406, 411, 569 F.2d 562, 565 (Ct.Cl. 1978))); *Keeter Trading Co. v. United States*, 79 Fed.Cl. 243, 260 (2007) (noting that a "fact-intensive inquiry" is required to determine whether a contract modification rises to the level of a cardinal change).

The court finds that the relevant facts support the conclusion that the 2011 contract is a new contract. Here, more than two years passed between the issuance of the two solicitations, *see* Def.'s Supp.App. 2 (noting the date of issuance of the 2009 Solicitation as January 13, 2009); Def.'s Supp.App. 183 (noting the date of issuance of the 2011 Solicitation as July 20, 2011), a lengthy period covered by a total of three different bridge contracts, *see* Pl.'s Reply 4–5 (describing the three bridge contracts under which plaintiff continued to perform the IT services in question). The two contracts are of different types, one a time and materials contract and one a firm fixed price contract. Def.'s Br. 10 (citing, inter alia, Def.'s Supp.App. 26, § 1.6.6; Def.'s Supp.App. 155, § 1.6.6). The award amount, *id.*, the start date and duration, *id.* at 11, the number and type of personnel required, *id.* at 12, and the location where services are to be performed, *id.* at 13, are also different for each contract. In addition, although the PWSs are very similar, sufficient differences exist in the services to be provided under the contract terms to support the contention that the two contracts are different. *See id.* at 12–13 (describing the differences in the services to be provided). On these facts, the court concludes that the 2011 contract awarded to Copper River is not the same as the procurement that was the subject of this court's 2010 injunction.

 Because the 2011 contract is a new contract, and because the court's 2010 injunction applied only to "the contract at issue" in that bid protest, the injunction does not apply to the Army's award of the 2011 Contract to Copper River.[10] Moreover, even if there were uncertainties about the scope of the words "contract at issue," the court should resolve those uncertainties in defendant's favor. *See, e.g., Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1382–83 (Fed.Cir. 2007) (noting that questions regarding the scope of an injunction, where the scope is unclear, are resolved in favor of the enjoined party) (citing, inter alia, *Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir.1971) ("[Injunctions] are binding only to the extent they contain sufficient description of the prohibited or mandated acts.... [A]mbiguities and omissions in orders redound to the benefit of the person charged with contempt.")); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2955 (2d ed. 1995) ("Since ... only those acts specified by the order will be treated as within its scope and ... no conduct or action will be prohibited by implication, all omissions or ambiguities ... will be resolved in favor of [the enjoined party].")." For this reason, plaintiff has failed to meet its burden to show a violation of the court's injunction.

2. Even If the Army Violated the Injunction, Its Violation Was the Result of a Good Faith and Reasonable Interpretation of the Order

 In addition to showing that " 'the offending party violated an order of the

---

leased from the obligation to continue work under the contract." *Black's Law Dictionary* 225 (8th ed. 2004).

**10.** Plaintiff suggested in its briefing that the change to the HUBZone statute does not affect the court's injunction because "absent Congressional language to the contrary, a new statute does not have a retroactive effect." *See* Pl.'s Mem. in Supp. of Mission Critical Solutions' Mot. to Enforce the Order of the Court (Pl.'s Mem.), Dkt. No. 35–1, at 5. In other words, plaintiff appears to argue that, if the agency is permitted to apply the new version of the HUBZone statute to the Copper River award, a problem of retroactivity will exist. However, because the court concludes that the 2011 contract is a new contract, the agency was correct to apply the current version of the HUBZone statute. *See Hawpe Constr., Inc. v. United States*, 46 Fed.Cl. 571, 580 (2000) ("Any new bidding process would be in accord with the publicly available ... regulations in effect at the time the RFP was issued."). Because the court finds that the 2011 contract is a new contract, plaintiff's retroactivity argument is without merit.

court'" and that "'the violation was more than de minimis,'" a party alleging a violation of a court order must also establish by clear and convincing evidence, *Filtration Dev. Co.*, 63 Fed.Cl. at 421, that "'the conduct was not the product of a good faith or reasonable interpretation of the order,'" *ViroMed Labs., Inc.*, 87 Fed.Cl. at 500 (quoting *Navajo Nation*, 46 Fed.Cl. at 358). A party should not be held in contempt if "'there is a fair ground of doubt as to the wrongfulness of [the party's] conduct.'" *Savantage Fin. Servs., Inc.*, 86 Fed.Cl. at 704 (2009) (quoting *MAC Corp. of Am.*, 767 F.2d at 885).

Defendant argues that, even if the court were to find that the award of Contract Number W91WAW–11–C–0027 to Copper River violated the court's injunction imposed in *Mission Critical I*, 91 Fed.Cl. at 412, "the Army's actions still were taken in good faith and were based upon a reasonable interpretation of the Court's order and existing law." Def.'s Resp. 17. In particular, defendant notes that the Army's contracting officer "consulted with Army legal counsel" before making a decision. *Id.* Defendant also argues that it was reasonable to read the court's order, which "focused upon the 'contract at issue,' not subsequent contracts, and only analyzed the prior version of the Small Business Act," to apply only to the procurement at issue in the bid protest and not to subsequent procurements. *Id.* at 18.[11]

Plaintiff argues that defendant's "violation was not the product of a good faith or reasonable interpretation of the court's injunction," Pl.'s Reply 9 (capitalization omitted), because the Army had "enough time" to comply with the court's order and because the contract awarded to Copper River was not a new procurement (an argument rejected by the court, *see* supra Part III.B.1), *id.* at 9–10.

Plaintiff has failed to meet its burden to establish by clear and convincing evidence that the Army's action in awarding Contract Number W91WAW–11–C–0027 to Copper River was not based upon a reasonable or good faith interpretation of the court's order. Beginning with the language of the order itself, the order applied to "the contract at issue." *Mission Critical I*, 91 Fed.Cl. at 412. A reasonable and good faith interpretation of the court's order could lead to the conclusion that the order applied only to the procurement that was the subject of the bid protest proceeding, in other words, the procurement "at issue," and not to a procurement for similar services concluded after the passage of more than two years and the award of three intervening bridge contracts for the services.

In addition, the court enjoined only the award of the contract "in a manner that is not in compliance with the Small Business Act as the court here interprets it." *Id.* It was reasonable for defendant, in reliance on the advice of counsel, *see* Def.'s Resp. 17, to conclude that the court's analysis and injunction applied only with respect to the version of the Small Business Act in effect at the time of the initial procurement. A party could, in good faith, view the injunction as inapplicable to the 2011 contract in light of amendments to the Small Business Act, which removed the mandatory language that the court previously relied on to find defendant in violation of the law and to enjoin future violations.

The court finds that defendant relied on a good faith and reasonable interpretation of the court's injunction when it determined that it was permitted to award Contract Number W91WAW–11–C–0027 to Copper River. Plaintiff has therefore failed to meet its burden to show that sanctions for civil contempt are warranted.

---

11. In addition, defendant argues that "[a]ttempting to comply with the current law is not an improper motive." Def.'s Resp. 17. According to defendant, plaintiff has not shown that the Army acted in bad faith, that is, with a specific intent to injure plaintiff, *id.* at 18, and has not overcome the "'strong presumption that government contract officials exercise their duties in good faith,'" *id.* at 17 (quoting *Am–Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed.Cir.2002)). These contentions go to whether defendant intended willfully or intentionally to violate the order and are irrelevant to the court's inquiry pursuant to *McComb*, 336 U.S. at 191, 69 S.Ct. 497 ("[I]t matters not with what intent the defendant did the prohibited act."). *See supra* note 3.

## IV. Conclusion

For the foregoing reasons, plaintiff's Motion is DENIED.

IT IS SO ORDERED.